<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

MIGUEL DURAN,              :
                            :  Civil Action No. 07-3589 (RMB)
          Plaintiff,    :
                            :
                            :
          v.              :  **OPINION**
                            :
WARDEN GARY MERLINE, et al.,  :
                            :
          Defendants.   :

**APPEARANCES:**

     MIGUEL DURAN, Plaintiff <u>pro se</u>
     #154134
     Atlantic County Justice Facility
     5060 Atlantic Avenue
     Mays Landing, New Jersey 08330

**BUMB**, District Judge

     Plaintiff Miguel Duran, currently confined at the Atlantic County Justice Facility in Mays Landing, New Jersey, seeks to bring this action <u>in forma pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed <u>in forma pauperis</u> pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint, and Duran's amended Complaint (Docket Entry No. 5),[1] pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint and amended Complaint should proceed in part.

## I.  BACKGROUND

Plaintiff, Miguel Duran ("Duran"), brings this civil rights action against the following defendants: Gary Merline, Warden at the Atlantic County Justice Facility ("ACJF"); Captain James D. Murphy; Yvonne Hickman, clerk at ACJF; John Solog, Case Worker; and the ACJF.  The following factual allegations by plaintiff are taken from the Complaint and amended Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

 Duran states that he is a pretrial detainee and has been confined at ACJF since June 23, 2007.  In his Complaint and amended Complaint, he alleges that the conditions of his

---

[1]  Duran submitted his amended Complaint, on or about December 18, 2007, before the filing of any answer or responsive pleading by defendants, which is permitted under Federal Rule of Civil Procedure 15(a).  Accordingly, this Court will review both the Complaint and amended Complaint together to determine whether there are any cognizable claims under 42 U.S.C. § 1983.

2

confinement at ACJF violate his constitutional rights, that he is denied medical care, and that he is denied access to the law library.  He also appears to assert that defendants are retaliating against him because he has filed grievances, and that defendants are interfering with his outgoing legal mail in violation of his constitutional rights.  Finally, Duran takes issue with the $50.00 housing fee levied against his inmate account each month.

<u>Conditions of Confinement</u>

Duran generally complains that he has been housed at ACJF in overcrowded and unsanitary conditions from June 23, 2007 to the present time and continuing.  He was initially housed in an intake cell for two days and forced to sleep on the floor twelve inches from the toilet.  Duran was then moved to Pod B-Right, which housed 65 to 70 inmates.  He was placed in a cell with two other inmates and given a bunk on the floor.  The day room in Pod B-Right houses 20 to 22 inmates, leaving no room for seating and table space for the inmates to eat.  Duran must eat in his cell on the floor.  Duran also must write his letters on the floor. He has a back injury which is aggravated from having to bend down to eat or write.  In addition, Duran complains that the level of noise due to the overcrowded conditions keeps him from sleeping, and he constantly has headaches as a result.  Inmates have to walk over each other because so many detainees sleep on the

floor.  The ventilation is bad and causes Duran trouble breathing.  It also becomes too hot without any air circulation.

There are only two showers for 65 to 70 inmates, and the showers are filthy and unsanitary.  The toilets are in the shower stalls, so inmates must either wait to use the shower or the toilet if the stall is occupied.  Duran complains that he has suffered severe pain, cramping and discomfort from having to wait and hold his bowel movements.  Duran also complains that he caught a rash from the dirty shower.

Given the number of inmates in the day room, Duran does not get his daily exercise, and rarely gets yard or gym time.  He states he receives recreation time only three to four times per week.  Furthermore, because the dayroom is being used to house detainees, it is too congested to allow for recreational table games.

Duran also complains about the quality of the food served at the ACJF.  For instance, in June and July 2007, mashed potatoes were served 5 to 7 times per week.  Detainees are generally served 4 cold sandwiches (mainly bologna and cheese) per day and cold cereal in the morning.

Duran next complains that he must pay $50.00 per month for "rent", which is a form of punishment as he is indigent and has not been found guilty of any crimes.  Moreover, the ACJF does not meet the minimum living standards.

4

On July 4, 2007, Duran filed a grievance complaining about the (1) overcrowded conditions, (2) lack of daily exercise, (3) the monthly fee for "rent", (4) lack of medical attention, and (5) lack of clean towels.  Duran alleges that defendant Merline responded to the grievances by stating that these conditions have lasted for as long as his 24 year tenure at ACJF.

Duran asserts that the conditions of his confinement and the actions of the defendants violate the New Jersey Administrative Code, Title 10A.  He also claims that his rights under the Fifth, Eighth, and Fourteenth Amendments have been violated.[2]  He alleges mental and emotional hardship, as well as loss of sleep and appetite.

Lack of Access to Law Library

Duran next alleges that he has been denied access to the law library at ACJF.  In the month of July 2007, Duran made over 15 requests for case citations, scribe materials and motions.  It took about 20 days for receipt of the requested materials.  He also alleges that he requested a habeas corpus form because he had been in jail for over one month without a probable cause hearing.  It is not clear whether he received the form.

---

[2]  The Fifth Amendment due process clause is not applicable to Duran because he is a state inmate.  In addition, the Eighth Amendment does not apply because Duran is not a convicted prisoner.

Duran also states that he has been denied requests or his request forms have been returned empty in retaliation for having filed grievances.[3]  He complains that he is only entitled to receive 50 copies per week, which limits his access to the law library.  Finally, there is no actual law library at ACJF, just a social worker who provides legal materials through law library request forms twice a week.

Denial of Medical Care

Duran also contends that he has been denied medical care and attention for injuries that he sustained on June 23, 2007.[4]  He was seen by the ACJF medical department and given Ibuprofen.  However, he claims he cannot sleep at night because of continuing back pain and headaches.

In July 2007, Duran went to the medical staff for a rash he had contracted from the showers.  He was given cream, but the rash continued to itch all day and night.  Duran also states that he requested a liver screening (although Duran does not indicate whether he suffers from hepatitis or other liver ailments that would necessitate periodic screening).  Duran was told that ACJF does not provide any kind of medical treatment at its facility.

---

[3]  Duran states that he filed a grievance on July 4, 2007, concerning the conditions of his confinement.

[4]  Duran states that he was injured by the police on June 23, 2007.

Next, Duran complains that inmates are required to pay a fee for medical treatment even if they are indigent.

Interference with Legal Mail

Finally, in his amended Complaint, Duran alleges that defendants, Captain Murphy, Yvonne Hickman, and John Solog, have interfered with the mailing of his motions and other court papers.  Duran states that, on several occasions he had sent some motions and letters to be copied and mailed to the courts, only to have the motions returned to him.  After Duran filed a grievance on October 17, 2007, plaintiff's legal was taken by Captain Murphy, who held the papers in his office for two weeks. Duran alleges that his outgoing legal mail is being reviewed and held for a period of time by the defendants.

Relief Sought

Duran seeks $2.5 million in compensatory and punitive damages for his pain and suffering.  He also seeks injunctive relief as follows: (1) meaningful access to the law library; (2) medical treatment for his liver, headaches and back pain; (3) reduction in inmate population to normal capacity of two inmates per cell; (4) clean ventilation and add additional showers to each dormitory (1 shower per 12 inmates); (5) prohibit inmates from bunking in dayroom so that it can be used for eating and recreation; (6) stop charging inmates $50.00 per month until living conditions meet the minimum living quality standards as provided by law; and (7) monthly monitoring of ACJF for compliance.

II.   <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a

9

complaint is "frivolous" is an objective one.  Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A pro se complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Haines, 404 U.S. at 521 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Alston v. Parker, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 453 (3d Cir. 1996).

III.   <u>SECTION 1983 ACTIONS</u>

Duran brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

Here, the claims asserted against the Atlantic County Justice Facility are subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  <u>See</u> <u>Grabow v. Southern State Correctional Facility</u>, 726 F. Supp. 537, 538-39 (D.N.J. 1989); <u>Mitchell v. Chester County Farms Prison</u>, 426 F. Supp. 271, 274 (D.C. Pa. 1976).  Accordingly, the Complaint will be dismissed in its entirety against this defendant pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

The Court now turns to address the claims as asserted against the remaining defendants.

IV.   <u>ANALYSIS</u>

A.   <u>Conditions of Confinement</u>

It appears that Duran is a pretrial detainee confined at ACJF at the time of the alleged incidents and presently.  As a pretrial detainee, Duran's constitutional claims concerning the conditions of his confinement are considered under the due process clause (of the Fourteenth Amendment) instead of the Eighth Amendment.  See <u>Hubbard v. Taylor</u>, 399 F.3d 150, 158 (3d Cir. 2005); <u>Fuentes v. Wagner</u>, 206 F.3d 335, 341 n.9 (3d Cir. 2000); <u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>, 834 F.2d 326, 346 n.31 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).  In <u>Hubbard</u>, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  399 F.3d at 165-67.  Pretrial detainees retain <u>at least</u> those constitutional rights enjoyed by convicted prisoners with respect to the conditions of their confinement. <u>Bell v. Wolfish</u>, 441 U.S. 520, 545 (1979); <u>Hubbard</u>, 399 F.3d at 165-66; <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 581-82 (3d Cir. 2003).

A conditions of confinement claim is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement.  See <u>Scott v. Moore</u>, 114

12

F.3d 51, 53 (5th Cir. 1997).  A constitutional violation exists
if the court finds that the conditions of confinement are not
reasonably related to a legitimate, non-punitive governmental
objective.  See Bell v. Wolfish, 441 U.S. at 538-39.  Analysis of
whether a pre-trial detainee has been deprived of liberty without
due process is governed by the standards set out by the Supreme
Court in Bell v. Wolfish.  See Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions
> or restrictions of pretrial detention that implicate
> only the protection against deprivation of liberty
> without due process of law, we think that the proper
> inquiry is whether those conditions amount to
> punishment of the detainee.  For under the Due Process
> Clause, a detainee may not be punished prior to an
> adjudication of guilt in accordance with due process of
> law. ...
>
> Not every disability imposed during pretrial
> detention amounts to "punishment" in the constitutional
> sense, however.  Once the government has exercised its
> conceded authority to detain a person pending trial, it
> obviously is entitled to employ devices that are
> calculated to effectuate this detention. ...
>
> A court must decide whether the disability is
> imposed for the purpose of punishment or whether it is
> but an incident of some other legitimate governmental
> purpose.  Absent a showing of an expressed intent to
> punish on the part of detention facility officials,
> that determination generally will turn on "whether an
> alternative purpose to which [the restriction] may
> rationally be connected is assignable for it, and
> whether it appears excessive in relation to the
> alternative purpose assigned [to it]."  Thus, if a
> particular condition or restriction of pretrial
> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not

13

constitutionally be inflicted upon detainees <u>qua</u> detainees.  ...

<u>Bell v. Wolfish</u>, 441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  441 U.S. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  <u>Id.</u> at 539 n.20, 561-62.

In <u>Bell</u>, the Supreme Court held that double-bunking under the circumstances presented in that case did not constitute punishment, and therefore, did not violate the pretrial detainees' due process rights.  <u>Id</u>., at 541-43.  The Court further noted that no due process violation occurred where pretrial detainees were detained for generally less than 60 days.  However, the Court cautioned that: "confining a given number of people in a given amount of space in such a manner as to cause them to endure genuine privation and hardship over an extended period of time might raise serious questions under the Due

14

Process Clause as to whether those conditions amounted to punishment." Id. at 542.

Such circumstances of serious overcrowding in a county jail were presented in Union County Jail Inmates v. DiBuono, 713 F.2d 984 (3d Cir. 1983). There, the Third Circuit established a two-part test in line with Bell:

> "we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions "cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them."

713 F.2d at 992.

Here, at this stage of the proceedings, it would appear that Duran's allegations are sufficient to state a claim for "punishment" in violation of the Fourteenth Amendment. Duran alleges that he is forced to sleep and eat in close proximity to dirty toilets and urinals. The severe overcrowding limits exercise and creates unsanitary and unhealthy conditions. He cannot sleep due to noise. The food is nutritionally inadequate, and he must share only two showers with 65 to 70 other inmates. Duran has had to endure these conditions for three months since June 23, 2007.[5] As the requirements of the Eighth Amendment set

---

[5]  Duran filed this Complaint in August 2007 and he is still confined at ACJF under the same conditions. Consequently, these conditions have continued for almost five months.

a "floor" for analysis of Fourteenth Amendment due process claims, it is worth noting that denial of the "minimal civilized measure of life's necessities", <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981), which would include basic sanitary conditions that Duran alleges are lacking, would be sufficient to state an actionable constitutional deprivation.  Further, these unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective.

Finally, Duran argues that he should not be charged a monthly fee of $50.00 for housing costs at ACJF when the conditions of his confinement do not meet the minimum living standards under the law.  In <u>Tillman v. Lebanon County Correctional Facility</u>, 221 F.3d 410 (3d Cir. 2000), the Court of Appeals for the Third Circuit held that the housing costs imposed on convicted prisoners did not violate the Eighth and Fourteenth Amendment where it was determined that the inmate was not subjected to cruel and unusual punishment, the amount did not violate the excessive fines clause, and the inmate was not denied procedural due process.  The Third Circuit did acknowledge, however, that prison conditions may amount to cruel and unusual punishment if they cause serious deprivations of basic human needs that deprive inmates of the minimal civilized measure of life's necessities.  221 F.3d at 418.

Here, Duran is not a convicted prisoner, and he has plainly alleged that the conditions of his confinement may be

16

unconstitutional and are well below the minimum standard for

quality of living.  Accordingly, this Court finds that Duran may

be able to demonstrate that the $50.00 monthly housing cost

violates due process if he is not afforded basic, humane

conditions of confinement as alleged.[6]  Therefore, Duran's

---

[6]  As a general rule, however, the assessment of costs
associated with having a person housed at a correctional facility
is not a violation of due process.  The Court of Appeals for the
Third Circuit noted that "sparing the taxpayers the cost of
imprisonment would likely be a constitutionally permissible
purpose," Tillman, 221 F.3d at 416 (quoting United States v.
Spiropoulos, 976 F.2d 155, 168 (3d Cir. 1992)), and found neither
a procedural violation in the implementation of such collection
policy nor a substantive one with respect to having such policy
promulgated.  Tillman, 221 F.3d at 421-24.

In Tillman, the plaintiff was assessed a daily charge of
$10.00 towards the housing expenses incurred by the correctional
facility.  Consequently, about half of the deposits made in
plaintiff's prison account were appropriated by the correctional
facility as a housing fee assessment.  Tillman challenged the
housing assessment on the grounds that the deposits were "sent in
to help [him] live better" and thus, were taken by the prison
authorities in violation of his constitutional rights.  Id. at
413-15.  The Third Circuit found no constitutional violation, but
noted that, in the event of a routine deduction of housing fees
from an inmate's account, even without authorization, available
state law post-deprivation remedies that satisfy minimum
procedural due process requirements may be adequate to recompense
the plaintiff.  Id. at 421 n. 12.

This Court notes that Duran's claim in this instance is
qualitatively different than that asserted by the plaintiff in
Tillman.  Here, Duran, an indigent, is essentially claiming that
the assessment of housing fees in complete disregard of providing
a habitable living environment with a "minimal civilized measure
of life's necessities" is a violation of his protected liberty
interest under the Due Process Clause of the Fourteenth
Amendment.  The Tillman court recognized that such allegations
may be sufficient to state a cognizable claim of constitutional
dimension.  Id. at 418.  Moreover, the purpose of the housing fee
or cost recovery program, whether it be to teach an inmate fiscal
responsibility or to reduce the county's cost in incarcerating

conditions of confinement claim, including his challenge to the $50.00 monthly housing assessment will be allowed to proceed at this time.

B.  Denial of Medical Care

     The Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, also controls the issue of whether prison officials must provide medical care to those confined in jail awaiting trial.  See City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 243-45 (1983); Hubbard, 399 F.3d at 158; Fuentes, 206 F.3d at 341 n.9; Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  See also Edwards v. Johnson, 209 F.3d 772, 778 (5th Cir. 2000)(citing Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979)); Despaigne v. Crolew, 89 F. Supp.2d 582, 585 (E.D.Pa. 2000) and Montgomery v. Ray, 145 Fed. Appx. 738, 740, 2005 WL 1995084 (3d Cir. 2005)(unpubl.)("the

---

prisoners is negated where the county jail facility is not providing for an inmate's basic human needs.  Under such circumstances as alleged, the housing fee effectively would constitute punishment, especially where the pretrial detainee may not be able to refuse to reside in the correctional facility pending his trial (i.e., where inmate is indigent and cannot afford bail).  This Court further notes the extent to which the conditions of confinement in county jails have been acknowledged as degrading, dehumanizing, overly punitive and correctional mistreatment.  See e.g., United States v. Sutton, 2007 WL 3170128 (D.N.J.  Oct. 25, 2007)(district court granted a variance well below the federal sentencing guideline range based on similarly deplorable conditions in the Passaic County Jail, finding that defendant had demonstrated a quality of prison life well below state and federal requirements so as to constitute excessive punishment.

proper standard for examining such claims is the standard set forth in Bell v. Wolfish, ...; *i.e.* whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to adjudication of  guilt....") (citing Hubbard, 399 F.3d at 158).  As mentioned above, the Third Circuit clarified that the Eighth Amendment standard only acts as a floor for due process inquiries into medical and non-medical conditions of pretrial detainees.  Hubbard, 399 F.3d at 165-67.

Here, Duran alleges that he received only Ibuprofen for his headaches and back pain, which has not helped.  He also states that he was given a cream for a rash he contracted in the showers, but that the cream did not alleviate the itching. Further, Duran was denied a liver screening for no other reason than the excuse that ACJF does not provide that kind of medical care at its facility.  Duran does not allege that he suffers from any liver ailment or disease affecting his liver that would require such screening.

Accepting these allegations as true for purposes of screening pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, this Court finds that there was no denial of medical treatment that was so excessive in relation to any stated purpose of jail security and administration, which would infer that such denial was intended as punishment.  See Hubbard, 399 F.3d at 158-63; Newkirk v. Sheers, 834 F. Supp. 772, 781 (E.D.Pa. 1993).  Duran has been provided medical care for his requested needs, although

19

the treatment has not met his satisfaction.  There are no allegations to suggest that treatment has been denied completely. Duran has not demonstrated any serious medical need that has been purposefully or willfully ignored by defendant.  Therefore, this claim alleging denial of medical care claims will be dismissed for failure to state a claim at this time.

Duran also alleges that he should not be charged a fee for medical services because he is indigent.  This claim likewise is subject to dismissal for failure to state a claim.  This Court notes that co-pay policies have been found constitutionally permissible if they do not interfere or impede with the timely and effective treatment of serious medical needs.  See <u>Reynolds v. Wagner</u>, 128 F.3d 166, 174 (3d Cir. 1997); <u>Shapley v. Nevada Bd. Of State Prison Comm'rs</u>, 766 F.2d 404 (9th Cir. 1985).  Here, there are no allegations that Duran was denied medical treatment simply because he could not afford to pay for medical services. He received medical treatment for the complaints he presented without regard to his ability to pay.  Therefore, this claim will be dismissed.

C.  <u>Access to Courts Claim</u>

Duran also claims that he has been denied access to the courts because defendant failed to provide an adequate law library with relevant legal materials that can be accessed by inmates at ACJF on a regular basis.

Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[7] The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  <u>Bounds v. Smith</u>, 430 U.S. 817, 822 (1977).  In other words, prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts."  <u>Id</u>. at 825. "'[T]he touchstone ... is meaningful access to the courts.'" <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1037 (3d Cir. 1988)(*quoting* <u>Bounds</u>, 430 U.S. at 823)(internal quotation omitted).

---

[7]   The right of access to the courts is an aspect of the First Amendment right to petition.  <u>McDonald v. Smith</u>, 472 U.S. 479, 482 (1985); <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u>, <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); <u>Bounds v. Smith</u>, 430 U.S. 817 (1977); <u>Wolff v. McDonnell</u>, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

In <u>Bounds</u>, the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.  Impairment of any <u>other</u> litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  <u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996) (emphasis in original).  Similarly, a pretrial detainee has a right of access to the courts with respect to legal assistance and participation in one's own defense against pending criminal charges.  <u>See</u>, <u>e.g.</u>, <u>May v. Sheahan</u>, 226 F.3d 876, 883-84 (7th Cir. 2000); <u>Caldwell v. Hall</u>, 2000 WL 343229 (E.D. Pa. March 31, 2000).  <u>But see</u> <u>United States v. Byrd</u>, 208 F.3d 592, 593 (7th Cir. 2000) (pretrial detainee who rejects an offer of court-appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); <u>Wilson v. Blankenship</u>, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); <u>United States v. Walker</u>, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

22

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." Lewis, 518 U.S. at 351.

In describing the scope of services which must be provided by the state to indigent prisoners, the Supreme Court has stated, "[i]t is indisputable that indigent inmates must be provided at state expense with paper and pen to draft legal documents, with notarial services to authenticate them, and with stamps to mail them.  ...  This is not to say that economic factors may not be considered, for example, in choosing the methods used to provide meaningful access.  But the cost of protecting a constitutional right cannot justify its total denial." Bounds, 430 U.S. at 824-25, clarified on other grounds, Lewis, 518 U.S. 343.

Here, Duran alleges that defendant does not provide adequate access to the law library.  He does not allege that he has

23

suffered an actual injury from the alleged inadequacy of the law library.   The Court also notes that Duran was not precluded or prevented from filing lawsuits on his own, as this Complaint demonstrates Duran's ability and access to do so.   Thus, without allegations of an actual injury, this claim will be dismissed without prejudice.

D.   Interference with Legal Mail

Inmates have a limited liberty interest in their mail under the First and Fourteenth Amendments; thus, an inmate's constitutional right to send and receive mail may be restricted only for legitimate penological interests.   See Thornburgh v. Abbott, 490 U.S. 401, 407 (1989); Turner v. Safley, 482 U.S. 78, 89 (1987).   A single interference with the delivery of an inmate's personal mail, without more, does not rise to the level of a constitutional deprivation.   Morgan v. Montayne, 516 F.2d 1367 (2d Cir. 1975), cert. denied, 424 U.S. 973 (1976).

The assertion that legal mail is intentionally opened and read, delayed for an inordinate period of time, or stolen states a First Amendment claim.   See, e.g., Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304 (7th Cir. 1993).   The Court of Appeals for the Third Circuit has held that "a pattern and practice of opening properly marked incoming court mail outside an inmate's presence infringes communication protected by the right to free speech.   Such a practice chills protected expression and may

24

inhibit the inmate's ability to speak, protest, and complain openly, directly, and without reservation with the court." Bierequ v. Reno, 59 F.3d 1445, 1452 (3d Cir. 1995) (applying the Turner analysis), implied overruling on other grounds recognized in Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Recently, the Third Circuit held that the legal mail policy of state prison in opening legal mail outside the presence of the inmate violated the inmate's First Amendment right to freedom of speech, and was not reasonably related to prison's legitimate penological interest in protecting health and safety of prisoners and staff.  Jones v. Brown, 461 F.3d 353 (3d Cir. 2006).  An inmate need not establish any consequential injury-in-fact to state such a First Amendment claim.  Id. at 358.

Here, Duran alleges that ACJF defendants, Captain Murphy, Yvonne Hickman and John Solog, continually open his outgoing legal mail outside of his presence and hold same for a long period of time without reason or justification.  Thus, the Third Circuit's edict in Jones v. Brown concerning the opening of legal mail outside plaintiff's presence lends legitimacy to Duran's claim.  Specifically, it would appear from plaintiff's allegations that these ACJF officials have engaged in a pattern and practice of opening, reading, and holding Duran's outgoing legal mail without plaintiff being present, and then picking and choosing what legal mail will be sent.  Such allegations, if true, may be sufficient at this time to support an interference

25

with the mail claim, and this claim will be allowed to proceed at
this time.

E.   Retaliation

Duran alleges that he has been denied library requests in
retaliation for filing grievances.  He also suggests that the
interference with his legal mail is retaliatory.  These
allegations may tend to support a claim of retaliation in
violation of Duran's First Amendment rights.

"Retaliation for the exercise of constitutionally protected
rights is itself a violation of rights secured by the
Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d
Cir. 1990).  To prevail on a retaliation claim, plaintiff must
demonstrate that (1) he engaged in constitutionally-protected
activity; (2) he suffered, at the hands of a state actor, adverse
action "sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights;" and (3) the protected
activity was a substantial or motivating factor in the state
actor's decision to take adverse action.  Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229
F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125
F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist.
Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v.
Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with
approval in Allah, 229 F.3d at 225.

26

Based on the allegations set forth in the Complaint, if true, Duran may be able to support a claim of retaliation for complaining about the conditions and other grievances at ACJF. Accordingly, this claim will be allowed to proceed at this early stage.

V.   <u>CONCLUSION</u>

Therefore, for the reasons set forth above, the Complaint and amended Complaint will be dismissed with prejudice as against defendant, Atlantic County Justice Facility.  Further, Duran's claims alleging denial of medical care and access to the courts (law library) will be dismissed without prejudice for failure to state a claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  However, Duran's claims alleging (1) unconstitutional conditions of confinement, (2) interference with his legal mail, and (3) retaliation, will be allowed to proceed at this time as against the remaining defendants.  An appropriate order follows.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> March 11, 2008</u>

27